DELIA PALMER, APPELLEE, v. LOYAL MYSTIC LEGION OF AMERICA, APPELLANT.

FILED APRIL 23, 1910. No. 15,973.

1. **Insurance:** ACTION ON BENEFIT CERTIFICATE: DEFENSES. In an action based upon a beneficiary certificate of membership issued April 4, 1895, it is *held* that the act of April 8, 1897 (Comp. St. 1909, ch. 43, sec. 94; laws 1897, ch. 47), prohibiting the acceptance of members of over the age of 55 years, cannot furnish a defense, the contract having been made prior to the passage of the act.

2. ————: ————: EVIDENCE: REPRESENTATIONS AS TO AGE. The evidence as to the age of the member at the time of his admission into defendant association is examined, and briefly referred to in the opinion, and it is found that there was sufficient to sustain the verdict of the jury that no misrepresentation as to the age of the member was made to defendant prior to or at the time of his admission to membership.

3. ————: ————: INTEREST. The by-laws of defendant, in force at the time of the death of the member, provided that payment should be made to the beneficiary within 90 days after the proof of death, but fixed no time within which the proof should be made. *Held,* That a reasonable time should be allowed within which to make such proof, which is held in this case to be 30 days, and that interest should not be computed upon the amount of the certificate until the expiration of 120 days after the death of the member, the proof having been made.

APPEAL from the district court for Adams county; HARRY S. DUNGAN, JUDGE. *Affirmed on condition.*

*Tibbets, Morey & Fuller,* for appellant.

*J. W. James, contra.*

REESE, C. J.

This action was commenced in the district court for
Adams county for the recovery of the sum of $2,000, and
interest, alleged to be due plaintiff as the beneficiary
under a certificate of membership issued to John A. Bard
on the 4th day of April, 1895, who died on the 28th day of
June, 1905. The petition is in the usual and approved
form, and alleges facts deemed essential to enable plain-
tiff to recover the amount named in the certificate of
membership. The answer of defendant, aside from certain
formal averments as to the purpose and character of its
organization as a fraternal beneficiary association with-
out insurance, etc., sets out certain articles and sections
of its by-laws, by which, and in connection with section
94, ch. 43, Comp. St. 1909, the acceptance of members of
over the age of 55 years is prohibited. It is then averred
that the said John A. Bard made application to become
a member of defendant on the 3d day of April, 1895, and
in which he falsely, fraudulently, knowingly, and with
intent to deceive, cheat and defraud defendant, represented
his age to be 49 years; that he was born on the 13th day
of August, 1847, while in truth and in fact he was at said
time over the age of 55 years; that defendant, relying upon
his said representations and warranties, admitted him to
membership without any knowledge on the part of defend-
ant of the fraud so perpetrated by him, and that by reason
thereof, and by force of law of the state and defendant's
by-laws, the said certificate of membership was, and had
at all times been, null and void, of no force or effect. The
answer also contains a general denial. Plaintiff filed a
reply denying the allegations of the answer.

With the exception of the issue presented by the answer,
as above, the principal facts were stipulated and agreed

upon, and which included the organization of defendant, the enactment of the by-laws attached to and made a part of the stipulation, the application for membership attached, the certificate also attached, that plaintiff is the beneficiary, a niece of said Bard, that Bard had, during his lifetime, paid all assessments and dues required by the laws, rules and regulations of the association, that the $2,000 demanded by plaintiff had not been paid, that prior to the commencement of the suit defendant had offered to pay plaintiff the amount of all dues, taxes and assessments paid by Bard during his lifetime, but which plaintiff had refused to accept, and that the said John A. Bard, to whom the beneficiary certificate was issued, died on the 20th (28th) day of June, 1905; thus practically leaving but the one question for litigation and submission to the jury. The jury returned a verdict in favor of plaintiff for the full amount claimed. A motion for a new trial was filed by defendant, which was overruled and judgment rendered. Defendant appeals.

A number of witnesses were called by each party upon the question of the age of Bard when he became a member of defendant association; defendant seeking to prove that he was over the age of 55 years, plaintiff contending that he was not. The contention of defendant is based largely upon the provisions of section 94, ch. 43, Comp. St. 1909 (Ann. St. 1909, sec. 6638), which is: "No fraternal society created or organized under the provisions of this act shall issue beneficiary certificate of membership to any person under the age of eighteen years, nor over the age of fifty-five years." The difficulty which we encounter is that the section referred to did not take effect until two years after the issuance of the certificate to Bard, and we are unable to see how it could affect the contract made two years prior to its enactment. But, in any event, the act also provides in section 92, ch. 43, Comp. St. 1909 (Ann. St. 1909, sec. 6636; laws 1897, ch. 47, sec. 2), that it shall have no effect upon certificates issued prior to January 1, 1898. The act of 1895, which placed the age

limit at 65 years, did not take effect until July, 1895, which was three months after the certificate was issued. We hold therefore that neither act could have the effect of invalidating the certificate. The constitution and by-laws of defendant were introduced in evidence, each containing a similar provision. The volume presented is the "Revision of 1898," proclaimed by the "Supreme Worthy Counselor" to be the constitution and by-laws by which "the order shall be governed on and after March 15, A. D. 1898." It is stipulated, however, that they were in "full force and effect at the time of the issuance of the certificate mentioned in plaintiff's petition, at the time he (the deceased) made his application for membership, and at the time of the death of the alleged member," and, were it not for the stipulation, the provisions of those instruments could not be held applicable to the case.

Upon the issue of the age of Bard at the time he became a member of defendant the case was made to depend almost exclusively, each party presenting an array of witnesses. Defendant examined by deposition a number of members of the family, consisting of brothers and sisters, all of advanced age, but none of them could state the exact age of deceased. None were aware of the existence of any family record giving the dates of birth of the members of the family. During the trial a Bible was presented by plaintiff containing entries of the dates of the birth of many members of the family, including that of deceased. The book in question showed upon its title page that it was published in 1835, while some of the entries date back as far as 1800. Evidence was introduced, and not contradicted, that all the entries were made by the father of deceased, who is shown to have died about the year 1895. The entries appear to have been made at one time and by the same hand. There are a number of erasures and changes apparent, and, among them, in the date of the birth of deceased. There is no record of marriages or deaths. The sole record is as to births. The page was probably transcribed from some other record by one not in the habit of

writing, and whose educational advantages had been limited. This is illustrated in the entry of the birth of the writer himself, which is put down as "July 13 18001." Experts were called as to the appearance of the changes in the record of the birth of the deceased and his sister, Lucinda E. Bard, his senior, and some, if not all, of them testified that the changes appear to have been made a long time prior to the trial, and with the same ink as the other entries, and, in the opinion of some, by the same hand. The witness producing the Bible testified that it was found some months prior to the trial stored away among a lot of cast-off relics and household effects of a brother of deceased. The witness, who was a son-in-law of a relative of deceased, testified that it was in his father's house in Sterling "stored away with some things there, after mother died." No light was thrown upon the history of the book except that it was found as above stated, the entries written by the father of deceased in his lifetime, the changes, apparently in his handwriting, made with the same ink as the other entries, and, as thus supported by the experts, the business men of the city of Hastings, it was admitted in evidence, taken and inspected by the jury, over the objections and exceptions of defendant; and the ruling admitting it is now assigned for error.

The court instructed the jury specially on this part of the evidence, instruction numbered 7, given by the court upon its own motion, being as follows: "The plaintiff has offered in evidence a family Bible, purporting to contain a record of the age of the insured, John A. Bard, which record, it appears, has been altered. The court instructs you that the burden of proof is upon the plaintiff to satisfactorily explain such alteration, and you should consider, from all the evidence, whether the plaintiff has satisfactorily explained such alteration, and give said record such credit and weight as evidence in the case as you deem it justly entitled to." By this instruction the whole matter of the authenicity of the record was left to the jury, and we think correctly.

A number of witnesses, citizens of Hastings, who had been intimately acquainted with deceased in his lifetime, testified as to his age, their testimony being based in some instances upon daily associations, and conversations had with him as to his age, all agreeing that his age was approximately that given by him in his application for membership in defendant. In support of the defense, witnesses of advanced age in New York testified to their association with deceased in his youthful days, and, by comparison with their own ages, gave it as their belief that in April, 1895, he must have been more than 55 years of age. Evidence was also presented from the records of a local lodge of the masonic fraternity at Schuyler Lake, New York, that deceased became a member of that lodge, having been "initiated Dec. 31st, 1862, was passed to the Fellow Craft deg. Jany. 28, 1863, was raised to the Master Mason's deg. March 6, 1863. He was a farmer and 26 years old, and resided in the town of Exeter, Otsego Co., N. Y." This is shown to be a correct synopsis, if not a copy, of the records of that lodge. If we assume that no mistake was made in the statement of his exact age at that time, and that that record is conclusive, deceased was from 57 to 59 years of age at the time he became a member of defendant, according to his nearest birthday at the time of his entrance into each organization. In his application to defendant for membership deceased, in April, 1895, gave his age as 49 years, stating that he was born August 13, 1847. If the date of his birth was correctly given, his age was as represented to defendant. This, however, does not correspond with the entry in the Bible presented, as that, as it appears, is August 13, 1845. Without further reference to the evidence upon the one point in issue, we can only say the whole mass of contradictory evidence was left to the solution of the jury for their decision with proper instructions thereon, and, leaving aside our own convictions, or what our own conclusions would have been, the finding of the jury must be sustained.

Complaint is made of the action of the court in refusing

to give instructions to the jury asked by the defendant. They were based upon the erroneous theory that the act of the legislature above referred to was in force at the time deceased became a member of defendant, and were properly refused, both upon the ground that they did not correctly state the law, and that they (though erroneous) were, in substance, given upon the court's own motion. The same may be said as to the contention that the verdict is contrary to instructions numbered 2, 3 and 6, given by the court upon its own motion. These instructions were in line with the contention of defendant upon the issue of the age of John A. Bard at the time he became a member of defendant, and were, of course, erroneous. But they were given in support of defendant's contention. They ought not to have been given, but the question submitted by them was decided adversely to defendant upon conflicting evidence, and there was no such error as worked prejudice to defendant.

However, suppose we are wrong in what we have said as to the law. Let it be conceded that the answer presented a complete defense, still there was sufficient presented by plaintiff as to the age of Bard to sustain the verdict, and the jury's finding upon the facts must be held conclusive. If the evidence was competent at all and entitled to be submitted to the jury, the duties of the court were at an end, so far as the evidence was concerned, and the jury were the sole judges of the weight and probative force with which it should be credited. There was ample evidence to sustain a finding that at the time Bard became a member of defendant he was not over 55 years of age. As to whether that evidence should be believed or not was a matter with which the court had nothing to do. It was for the jury alone.

The court instructed the jury that, in case their finding was in favor of plaintiff, they should assess the amount of her recovery in the sum of $2,000, "with interest thereon at 7 per cent. per annum," without fixing a date or event from which the interest should be computed. The jury re-

turned a verdict for $2,405.10, which included interest at 7 per cent. from the date of the death of Bard. It is contended by defendant that interest should not have been computed from that date, but that, if interest should be computed at all, it could only be from the date when suit could be brought, which by the by-laws, it is asserted, fixes 90 days after the receipt of proofs before the certificate became collectible, and that until that time no interest should be charged. With this contention we are inclined to agree, notwithstanding the denial of any liability of defendant. In *Dary v. Providence Police Ass'n* (1905), 27 R. I. 377, the court, in discussing the question of interest, say: "But a beneficial association ought not to be treated as a delinquent debtor before demand made upon it, followed by its refusal or neglect. While demand was unnecessary in the circumstances of the case for the purpose of keeping the claim alive, it was necessary for the purpose of creating the relation of debtor and creditor." Cited in Hardy, Fraternal Society Law (1907 ed.), 856. See, also, *Knights of Pythias v. Allen*, 104 Tenn. 623, and 29 Cyc. 255.

It is alleged in the petition and agreed in the stipulation that after the death of Bard proof of such death was duly made, but no date is given, and we can find nothing upon the subject in the bill of exceptions. Defendant's by-laws, in force at the time of the death of Bard, provide that the amount named in the benefit certificate is to be paid "within 90 days after proper proof of death of said member is furnished," etc., but we are unable to find anything fixing the time within which the proof is to be made. It being conceded that the proof was duly made, we may assume that it was made immediately after the death of the member, or within 30 days thereafter. This would allow defendant 90 days thereafter in which to make payment, or 120 days after the death. Bard died June 28, 1905. Interest would begin to accumulate October 28 of that year, at the rate of 7 per cent. per annum. The verdict was returned May 12, 1908. The interest on $2,000 would be

$355.45, which added to the principal makes $2,355.45, which should have been the amount of the verdict and judgment, the judgment to draw interest at the same rate from the date of its rendition.

The judgment of the district court will be reversed and the case remanded for further proceedings, unless the plaintiff file a remittitur from the judgment of $49.65. If such remittitur is filed within 30 days, the judgment will be affirmed.

JUDGMENT ACCORDINGLY.